**No. 23-60495**

## UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

### EXXONMOBIL RESEARCH & ENGINEERING COMPANY, INCORPORATED, now known as EXXONMOBIL TECHNOLOGY & ENGINEERING COMPANY

Petitioner/Cross-Respondent

v.

### NATIONAL LABOR RELATIONS BOARD

Respondent/Cross-Petitioner

_____

### ON PETITION FOR REVIEW AND CROSS-APPLICATION FOR ENFORCEMENT OF AN ORDER OF THE NATIONAL LABOR RELATIONS BOARD

_____

### OPPOSITION TO PETITIONER/CROSS-RESPONDENT'S PETITION FOR REHEARING EN BANC ON BEHALF OF RESPONDENT/CROSS-PETITIONER THE NATIONAL LABOR RELATIONS BOARD

_____

**KIRA DELLINGER VOL**
*Supervisory Attorney*

**ERIC WEITZ**
*Attorney*

**National Labor Relations Board**
1015 Half Street, SE
Washington, DC 20570
(202) 273-0656
(202) 273-3757

**WILLIAM B. COWEN**
    *Acting General Counsel*
**STEPHANIE CAHN**
    *Acting Deputy General Counsel*
**PETER SUNG OHR**
    *Associate General Counsel*
**RUTH E. BURDICK**
    *Deputy Associate General Counsel*
**MEREDITH JASON**
    *Assistant General Counsel*

**National Labor Relations Board**

# TABLE OF CONTENTS

**Headings**                                                                  **Page(s)**

Table of contents.................................................................................i

Table of authorities ........................................................................ ii

Statement in opposition to rehearing en banc ..........................................1

Statement of the case......................................................................3

Argument........................................................................................8

   I.   The panel correctly held that the Board did not abuse its discretion
        by vacating its original decision given the specific facts of this case ............8

   II.  The panel applied settled law to uphold the Board's finding that
        certain statements during bargaining were unlawfully coercive...................11

Conclusion .....................................................................................17

Certificate of service .......................................................................18

Certificate of compliance ..................................................................19

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Charge Card Ass'n v. NLRB*,
  653 F.2d 272 (6th Cir. 1981) ..............................................................15

*Dow Chem. Co. v. NLRB*,
  660 F.2d 637 (5th Cir. 1981) ..............................................................15

*FDRLST Media LLC v. NLRB*,
  35 F.4th 108 (3d Cir. 2022) ...............................................................14

*Lucio v. Lumpkin*,
  987 F.3d 451 (5th Cir. 2021) ..............................................................12

*NLRB v. Carilli*,
  648 F.2d 1206 (9th Cir. 1981) ............................................................15

*NLRB v. Gissel Packing Co.*,
  395 U.S. 575 (1969)............................................................................13

*NLRB v. Miller Waste Mills*,
  315 F.3d 951 (8th Cir. 2003) ..............................................................14

*NLRB v. Proler Int'l Corp.*,
  635 F.2d 351 (5th Cir. 1981) ..............................................................15

*Roper Co. v. NLRB*,
  712 F.2d 306 (7th Cir. 1983) ..............................................................15

*Tesla, Inc. v. NLRB*,
  120 F.4th 433 (5th Cir. 2024) ...............................................12, 15, 16

*Williams v. Pennsylvania*,
  579 U.S. 1 (2016)........................................................................ 10, 11

**Statutes**

  18 U.S.C. § 208(a)................................................................................6
  29 U.S.C. § 158(a)(1)                                                            7, 8
  29 U.S.C. § 158(c)................................................................ 11, 12, 15

**Regulations**                                                           **Page(s)**

  5 C.F.R. § 2638.104                                                              5
  5 C.F.R. § 2640.201(b)(2)(i) ...............................................................6

# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

_____

## No. 23-60495

_____

## EXXONMOBIL RESEARCH & ENGINEERING COMPANY, INCORPORATED, now known as EXXONMOBIL TECHNOLOGY & ENGINEERING COMPANY

**Petitioner/Cross-Respondent**

**v.**

## NATIONAL LABOR RELATIONS BOARD

**Respondent/Cross-Petitioner**

_____

## ON PETITION FOR REVIEW AND CROSS-APPLICATION FOR ENFORCEMENT OF AN ORDER OF THE NATIONAL LABOR RELATIONS BOARD

_____

## OPPOSITION TO PETITIONER/CROSS-RESPONDENT'S PETITION FOR REHEARING EN BANC ON BEHALF OF THE NATIONAL LABOR RELATIONS BOARD

_____

## STATEMENT IN OPPOSITION TO REHEARING EN BANC

In January 2022, after independent investigations by its nonpartisan Inspector General and its Designated Agency Ethics Official identified a financial conflict of interest, the five-member National Labor Relations Board ("the Board") unanimously agreed that former Board Member William J. Emanuel should not

have participated in a September 2020 decision involving ExxonMobil Research & Engineering Co., Inc., now known as ExxonMobil Technology and Engineering Co. ("ExxonMobil"). (ROA.3042-3043.)[1] The Board reasonably concluded that vacating its prior decision and holding the case for redecision would best preserve public confidence in the integrity and impartiality of the Agency. (ROA.3192.) In a subsequent decision readjudicating the merits, the Board largely agreed with the original Board panel in dismissing a host of unfair-labor-practice allegations, but found three unfair labor practices involving ExxonMobil's conduct during collective bargaining. (ROA.3202-3216.)

On March 12, 2025, a panel of this Court (Circuit Judges Richman, Graves, and Ramirez) unanimously enforced the Board's Order. Based on the unique facts of this case, the panel held that the Board did not abuse its discretion by vacating its original decision and redeciding the case de novo. (Op.8-16.) The panel also correctly held that substantial evidence supports the Board's unfair-labor-practice findings through its application of settled law to these facts. (Op.17-22.)

Contrary to ExxonMobil, nothing about this case rises to the level of "exceptional public importance" warranting the "extraordinary procedure" of rehearing en banc. 5th Cir. I.O.P. 40. The panel issued a well-reasoned, fact-

---

[1] "ROA" refers to the administrative record filed with the Court, which includes the Board decisions under review. "Op." refers to the March 12, 2025 opinion issued by a panel of this Court. "Pet." refers to ExxonMobil's petition.

bound opinion that does not conflict with any decision of the Supreme Court, this

Court, or any other court.

## STATEMENT OF THE CASE

1.  ExxonMobil is engaged in the research and development of energy-sector

technologies and products out of a facility in New Jersey.  (Op.2, ROA.3222.)

Independent Laboratory Employees Union ("the Union") represents approximately

165 employees at the New Jersey facility, most of whom are research technicians.

(Op.2, ROA.3222.)

The collective-bargaining agreement between ExxonMobil and the Union

expired in May 2018 and the parties began negotiating a successor agreement.

(Op.2-4, ROA.3206.)  ExxonMobil's lead negotiator was manager Russell Giglio,

and the Union's lead negotiator was Union President Michael Myers.  (Op.2,

ROA.3206.)  The Union's negotiating team was composed entirely of bargaining-

unit employees, including Myers, who also served as union officers.  (ROA.3222.)

The parties engaged in negotiations across 23 bargaining sessions (Op.2), resulting

in a number of disputes, though the present petition involves just one narrow issue.

From the outset of bargaining, the Union sought to secure the same eight

weeks of paid parental time off ("PPTO") that ExxonMobil had recently granted to

all unrepresented employees.  (Op.4, ROA.3207.)  When asked by the Union what

concessions were necessary to obtain the same eight weeks of PPTO, and despite

4

having previously stated the Union needed to make such concessions, ExxonMobil consistently demurred.  (Op.4-5, ROA.3207, ROA.3212.)  The Union eventually proposed giving up a $5,000-per-employee ratification bonus in exchange for the eight weeks of PPTO.  (Op.4, ROA.3207.)  At a July 8 bargaining session, Giglio expressed incredulity at such proposal, stating, "[D]o you really think you are doing your constituents the right thing by saying no ratification bonus?  Do you really think 144 of those people [referring to the bargaining-unit employees] would want PPTO versus $5,000 up front?"  (Op.4, ROA.3213 & n.22.)

The next day, during the parties' July 9 bargaining session, Myers again asked what it was going to take to secure eight weeks of PPTO for the bargaining-unit employees.  (Op.4, ROA.3207.)  Giglio responded that the employees should "[w]alk away from the bargaining agreement."  (Op.4, ROA.3213.)  Myers asked Giglio to clarify what he meant, and Giglio reiterated that if employees "weren't covered by a [contract] … [they] would have eight weeks of [PPTO]."  (Op.4, ROA.3213.)  Myers replied, "So you are saying if [we] get [de]certified, you will give us eight weeks of [PPTO]?"  (ROA.3207.)  Giglio responded by stating, "You said that, I didn't."  (ROA.3207.)  When the Union again asked for clarification as to what it would take to secure the requested PPTO, Giglio again equivocated, stating that ExxonMobil had already made an "incredible" offer and that he "[couldn't] answer" what concessions were necessary.  (Op.5.)  Later that day,

during a sidebar discussion, Giglio reiterated that the employees should "go without a union" if they desired the PPTO benefit.  (Op.5, ROA.3213.)

2.  Following the issuance of an unfair-labor-practice complaint by the Board's General Counsel, an administrative law judge issued a recommended decision finding that ExxonMobil committed numerous unfair labor practices during its negotiations with the Union—most of which are no longer at issue and are therefore not addressed here.  (ROA.3237-3243.)

On September 28, 2020, the Board (Chairman Ring, Members Kaplan and Emanuel) issued a decision and order reversing the judge's unfair-labor-practice findings and dismissing the complaint in its entirety.  (Op.5-6, ROA.3066-3073.)

Several months later, Member Emanuel filed a financial disclosure report that caused concern with the Board's Designated Agency Ethics Official regarding potential conflicts.  (Op.6, ROA.3050.)  Pursuant to regulations promulgated under the Ethics in Government Act, 5 U.S.C. §§ 13101, et seq., federal agencies are required to designate such an ethics official with primary responsibility for resolving conflicts of interest.  5 C.F.R. § 2638.104.  In May 2021, at the request of the Designated Agency Ethics Official, the Board's Inspector General opened an investigation into Member Emanuel's financial holdings.  (Op.6, ROA.3050.)[2]

---

[2]  At the time, Chairman Ring and Members Kaplan and Emanuel all remained on the Board and constituted a majority of the Board's members.

On August 21, 2021, the Inspector General issued a report concluding that Member Emanuel had improperly participated in several cases while holding financial conflicts of interest in violation of a federal criminal statute, 18 U.S.C. § 208(a), and its implementing regulations, 5 C.F.R. § 2640.201(b)(2)(i). (ROA.3041.)  The Inspector General concluded that Member Emanuel's subsequent claim that he lacked knowledge of the conflicts was "without merit." (Op.6, ROA.3051.)  After reviewing the Inspector General's report, the Designated Agency Ethics Official determined that Member Emanual should have been disqualified from participating in several cases, including this case involving ExxonMobil.  (Op.6, ROA.3041.)

On January 7, 2022, the Board (Chairman McFerran, Members Kaplan, Ring, Wilcox, and Prouty; Member Ring, dissenting in part) accepted the Designated Agency Ethics Official's determination that Member Emanuel should have been disqualified, and issued a notice to show cause why the prior decision in this case should not be vacated.  (Op.6, ROA.3041-3042.)  The Board unanimously agreed that Member Emanuel should not have participated in the September 2020 decision, and that the positions of the parties should be solicited as to whether the Board should vacate that decision.  (ROA.3043.)

On August 19, 2022, the Board (Chairman McFerran and Member Wilcox; Member Ring dissenting) issued an order, reported at 371 NLRB No. 128, vacating

the September 2020 decision.  (Op.6-7, ROA.3191-3205.)  The Board determined

that vacating the prior decision would best preserve public confidence in the

integrity and impartiality of the Board's processes.  (Op.6-7, ROA.3192.)  The

Board thus held the case for redecision.  (ROA.3197.)

On August 25, 2023, the Board (Chairman McFerran, Members Wilcox and

Prouty; Member Kaplan, dissenting; Member Prouty, dissenting in part) issued a

new decision dismissing most of the unfair-labor-practice allegations but finding,

as relevant here, that ExxonMobil violated Section 8(a)(1) of the National Labor

Relations Act ("the Act"), 29 U.S.C. § 158(a)(1), through Giglio's statements

during bargaining implying that employees would be better off with respect to

PPTO if they abandoned union representation.  (ROA.3206-3216.)  Member

Kaplan dissented to express his view that the September 2020 decision should not

have been vacated.  (ROA.3217.)   Member Prouty would have found additional

unfair labor practices by ExxonMobil and dissented in part.  (ROA.3217-3221.)

3.  On review, a panel of this Court correctly held that the Board did not

abuse its discretion by vacating the original decision and redeciding the case.

(Op.8-16.)  As the panel observed, the Board's procedural rulings in such context

are reviewed for an abuse of discretion.  (Op.7-8, 16.)  The panel explained that the

"plain text" of the Act grants the Board "broad authority to modify or set aside its

orders," and that the Board provided a "comprehensive rationale" for vacating its

original decision based on the specific facts of this case that "easily clears the abuse of discretion standard." (Op.8-16.)

Turning to the merits, the panel also correctly held that substantial evidence supports the Board's unfair-labor-practice findings, including the Section 8(a)(1) violation ExxonMobil addresses in its petition. (Op.17-22.) The panel explained that, when viewed in the context of ExxonMobil's overall course of conduct at the bargaining table, the Board could "justifiably" conclude that Giglio's repeated statements suggesting employees who desired a PPTO benefit should abandon union representation constituted unlawful coercion. (Op.21-22.)

## ARGUMENT

**I.     The Panel Correctly Held That the Board Did Not Abuse Its Discretion by Vacating Its Original Decision Given the Specific Facts of This Case**

ExxonMobil first argues that rehearing en banc and reversal of the panel's well-reasoned opinion are necessary to prevent "politicization" of federal labor law. (Pet.10-15.) In doing so, ExxonMobil fails to engage with the panel's reasoning or the unique factual circumstances of this case.

As an initial matter, ExxonMobil's argument is premised on factual errors. For example, ExxonMobil asserts that "NLRB staffers" (Pet.iii) acting under the auspices of "the new Administration" (Pet.9) initiated the investigation of Member Emanuel's financial conflicts of interest. But the investigation was initiated by the Board's Designated Agency Ethics Official and conducted by the Board's

independent Inspector General at a time when the same Board members who

participated in the original September 2020 decision continued to constitute the

Board majority.  (Op.6 & n.3.)  Similarly, ExxonMobil implies that Member

Emanuel did not actually have a financial conflict of interest.  (Pet.iii, 9-10.)  But

all five Board members unanimously agreed that Member Emanuel should not

have participated in the September 2020 decision.  (ROA.3042-3043.)

ExxonMobil also claims the Board was determined to reverse "pro-management

decisions" (Pet.10) and that it singled out ExxonMobil as part of a "war on oil"

(Pet.9).  But the Board largely agreed with the original Board panel and dismissed

most of the unfair-labor-practice allegations in this case, differing only as to three

violations and issuing an order that simply requires ExxonMobil to cease and

desist from certain unlawful conduct and to post a remedial notice at its New

Jersey facility.  (ROA.3206-3216.)

Meanwhile, the legal basis for ExxonMobil's argument for rehearing is

unclear.  ExxonMobil seems to concede that the "statutory provisions" of the Act

permitted the Board to vacate its September 2020 decision in the circumstances

presented (Pet.11-12), and ExxonMobil largely fails to take issue with the panel's

careful analysis (Op.8-16).  In nonetheless arguing that the full Court should grant

rehearing to "revisit" the outcome (Pet.10-14), ExxonMobil relies on a series of

implausible hypotheticals that the Court has no cause to address.  The panel held

only that the Board did not abuse its discretion by vacating a prior decision based on the unique facts of *this case*. (Op.16.) The panel observed, for example, that the Board's vacatur decision was based on an undisputed conflict of interest that would have also justified disqualification and vacatur under the statute governing judicial recusals. (Op.11.) Similarly, the panel observed that, even assuming a reasonable-time requirement applies to the Board's vacatur authority, any delay in this case was "reasonable" and measurable "in weeks, not years." (Op.12-13.)

Nothing in the panel's opinion would sanction the type of arbitrary agency actions contemplated in ExxonMobil's petition, and nothing about this particular case rises to the level of "exceptional importance" warranting rehearing en banc. 5th Cir. I.O.P. 40. The facts giving rise to the Board's vacatur order in this case are unprecedented and unlikely to recur. And ExxonMobil has failed to identify any conflict with existing precedent from this Court or any other court.

ExxonMobil's halfhearted argument (Pet.14-15) that the panel opinion "contravenes" the Supreme Court's analysis in *Williams v. Pennsylvania*, 579 U.S. 1 (2016), warrants little response. ExxonMobil mischaracterizes the Court's analysis in *Williams*, which made clear that rehearing before a panel of judges "who were exposed to a disqualified judge" is *not* an ideal remedy and does *not* guarantee "complete relief" for the judge's prior improper participation. *Id.* at 16. However, recognizing that such rehearing was the only remedy available in

*Williams*, the Court observed that "[a]n inability to guarantee complete relief …

does not justify withholding a remedy altogether." *Id.*  ExxonMobil quotes the

remainder of the Court's observation out of context (Pet.14) and wrongly implies

that the Court held such remedy to be adequate in every case.

Moreover, recognizing the *adequacy* of a remedy is a far cry from holding

that such remedy is *mandatory* in every context—much less so here, where the

term of one of the two non-conflicted Board members on the original panel had

expired by the time the case was redecided.  The panel correctly held, and

ExxonMobil does not contest, that the Board's procedural rulings in this case are

reviewed under an abuse-of-discretion standard.  (Op.7-8, 16.)  Regardless of

whether *Williams* can be construed as permitting the remedy ExxonMobil

demands, *Williams* certainly does not "compel the suggestion Exxon posited at oral

argument:  that a reconstituted panel should have included the non-conflicted

Board members that participated in the original decision."  (Op.16.)

## II.    The Panel Applied Settled Law To Uphold the Board's Finding That Certain Statements During Bargaining Were Unlawfully Coercive

ExxonMobil further argues that the panel's opinion "presents a First

Amendment issue" and conflicts with various opinions construing Section 8(c) of

the Act, which protects the right of employers to express "any views, argument, or

opinion" not rising to the level of unlawful coercion, 29 U.S.C. § 158(c).  (Pet.15-

19.)  However, ExxonMobil's arguments are both forfeited and meritless.

12

It is well established that a party who fails to raise a particular argument before the original panel forfeits that argument for purposes of en banc review. *Lucio v. Lumpkin*, 987 F.3d 451, 478 (5th Cir. 2021) (en banc).  Here, ExxonMobil made no mention of the First Amendment or Section 8(c) of the Act at any point in its briefing to the panel.  Nor did ExxonMobil attempt to raise the Court's opinion in *Tesla, Inc. v. NLRB*, 120 F.4th 433 (5th Cir. 2024) (en banc), either at oral argument or in a letter of supplemental authority.  To the contrary, ExxonMobil accepted the Board's framing of the applicable law and made the purely factual argument that Giglio's comments should be interpreted in context as "stray, sarcastic" remarks that the employees would not take seriously.  (Opening-Br.41-42, Reply-Br.19.)  The panel's fact-bound holding that substantial evidence supports the Board's justifiable reading of the record (Op.21-22 & n.8) does not warrant rehearing en banc.  And given the arguments presented to the panel, ExxonMobil forfeited any broader challenge based on *Tesla*, the First Amendment, or Section 8(c).  *Lucio*, 987 F.3d at 478.

In any event, ExxonMobil's claims of a substantive conflict warranting en banc review (Pet.15-19) are baseless.  ExxonMobil misrepresents the facts and the narrow scope of the unfair labor practice found by the Board and upheld by the panel.  Contrary to ExxonMobil, Giglio did not merely make an isolated "factual observation" or a statement of "opinion" that might be protected by the First

13

Amendment or Section 8(c).  (Pet.17-18.)  The panel here emphasized that the unlawfulness of Giglio's statements resulted from the context in which they were made, the backdrop of Giglio's actions at the bargaining table, and the inferences employees would reasonably draw from the statements in light of those actions. (Op.19-22.)  The parties were in the midst of contract negotiations, and the Union had been seeking for weeks to secure the same PPTO as non-bargaining-unit employees.  (Op.21.)  Giglio, as ExxonMobil's chief representative at the bargaining table, had repeatedly rebuffed the Union's attempts to clarify what concessions were necessary to secure PPTO and had questioned Union President Myers's authority to offer certain concessions.  (Op.21.)  In the wake of this "initial refusal to bargain on the PPTO issue" (Op.19), Giglio then stated multiple times that employees needed to "go without a union" in order to obtain the PPTO (Op.4-5, Op.19, Op.21).  As the panel affirmed, the Board reasonably found on these facts that the message conveyed to employees was that "those who desire the benefit can simply get it by leaving the Union" rather than obtaining it through good-faith collective bargaining.  (Op.21.)

A "truthful" statement (Pet.18) is not by necessity protected when it involves the prediction of consequences entirely within the employer's own control.  *NLRB v. Gissel Packing Co.*, 395 U.S. 575, 618 (1969).  For example, it would obviously not be a valid defense to an unlawful-threat finding for an employer to argue that it

honestly intended to retaliate against employees for unionizing.  And as the panel

correctly observed here, "truthful statements, when subsumed in the specific

context of negotiations," can sometimes cross the line into unlawful coercion by

suggesting to employees that continued union representation stands as an

impediment to the employer agreeing to grant improved benefits.  (Op.21.)

ExxonMobil is wrong to imply (Pet.18) that finding unfair-labor-practice liability

in such a context is anomalous or unsupported by recent caselaw.  *See, e.g.*, *NLRB*

*v. Miller Waste Mills*, 315 F.3d 951, 953, 955 (8th Cir. 2003) (affirming "clear

violation" where employer implied, in the midst of contract negotiations, that

employees would only receive immediate wage increase by leaving union).

There is no conflict between the panel's opinion and the various cases cited

by ExxonMobil in its petition.  (Pet. 16-18.)  None of the cited cases involved

comparable facts or statements made during contract negotiations implying that

employees would only receive certain benefits by forsaking union representation.

Instead, each of the cited cases involved isolated statements expressing general

opposition to unionization or other management-employee interactions that, as a

factual matter, reviewing courts held did not rise to the level of unlawful coercion

in the context in which they occurred.[3]  There is no dispute as to the relevant legal

---

[3]  *FDRLST Media LLC v. NLRB*, 35 F.4th 108, 122-23 (3d Cir. 2022) (emphasizing importance of surrounding context, including lack of any active labor dispute, in holding "comical" public tweet could not reasonably be interpreted as threat);

standards or the protections of Section 8(c) as discussed in the cited cases, and

instead this case turns on a factual dispute over how Giglio's statements would be

interpreted in the specific context they were made. ExxonMobil disagrees with the

panel's holding that substantial evidence supports the Board's conclusions (Op.22),

but such case-specific, fact-bound disputes do not warrant rehearing en banc.

Nor does this Court's en banc decision in *Tesla* (Pet.15-17) support

ExxonMobil's petition. In *Tesla*, the Court vacated a Board order requiring a

management official to delete a public tweet that the Board found constituted an

unlawful threat, with a plurality of eight judges joining a per curiam opinion

concluding that such deletion remedy exceeded the Board's authority. 120 F.4th at

438-39. The plurality declined to reach the merits of whether the tweet in question

violated the Act and "assume[d] without deciding" that it was properly deemed an

---

*Roper Co. v. NLRB*, 712 F.2d 306, 311 (7th Cir. 1983) (holding supervisor's isolated statement that employees made mistake voting for union was not coercive where employees would have construed it as an "expression of his own opinion"); *Dow Chem. Co. v. NLRB*, 660 F.2d 637, 643-50 (5th Cir. 1981) (holding employer made lawful pre-election campaign statements expressing opposition to union and concluding Board's contrary findings lacked evidentiary support). Two of the cited cases involved unlawful-interrogation allegations—an analytically distinct violation of the Act—and thus are plainly inapposite. *Charge Card Ass'n v. NLRB*, 653 F.2d 272, 273 (6th Cir. 1981); *NLRB v. Proler Int'l Corp.*, 635 F.2d 351, 355 (5th Cir. 1981). In *NLRB v. Carilli*, 648 F.2d 1206 (9th Cir. 1981), cited by ExxonMobil (Pet.18) but unhelpful to its position, the court affirmed that despite the "surface innocuousness" of the statements at issue, substantial evidence supported the Board's finding that such statements were coercive when "viewed in their overall context." *Id.* at 1212.

unfair labor practice. *Id.* at 438 & n.2. Judge Haynes concurred in the judgment but did not join the plurality's opinion, *id.* at 435 n.1, and eight judges joined a dissenting opinion authored by Judge Dennis, *id.* at 441-58. Not only is *Tesla* therefore both nonprecedential and inapposite—since a majority of the Court did not endorse the plurality opinion, and since the present case does not involve a comparable deletion remedy—but the factual context of the unfair-labor-practice finding here is far more narrow.

## CONCLUSION

For the foregoing reasons, the Board respectfully requests that the Court

deny ExxonMobil's petition for rehearing en banc.

Respectfully submitted,

/s/ Kira Dellinger Vol
KIRA DELLINGER VOL
*Supervisory Attorney*

/s/ Eric Weitz
ERIC WEITZ
*Attorney*
National Labor Relations Board
1015 Half Street SE
Washington, DC 20570
(202) 273-0656
(202) 273-3757

WILLIAM B. COWEN
    *Acting General Counsel*

STEPHANIE CAHN
    *Acting Deputy General Counsel*

PETER SUNG OHR
    *Associate General Counsel*

RUTH E. BURDICK
    *Deputy Associate General Counsel*

MEREDITH JASON
    *Assistant General Counsel*

National Labor Relations Board
May 2025

# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

_____
                )

EXXONMOBIL RESEARCH & ENGINEERING COMPANY, )
INCORPORATED, now known as EXXONMOBIL   )  No.  23-60495
TECHNOLOGY & ENGINEERING COMPANY   )
                )
         Petitioner/Cross-Respondent   )
                )
         v.            )
                ) Board Case Nos.
NATIONAL LABOR RELATIONS BOARD   ) 22-CA-218903
                ) 22-CA-223073
         Respondent/Cross-Petitioner   ) 22-CA-232016
_____ )

## CERTIFICATE OF SERVICE

I hereby certify that on May 12, 2025, I electronically filed the foregoing

document with the Clerk of the Court for the U.S. Court of Appeals for the Fifth

Circuit by using the CM/ECF system.  I certify the foregoing document was served

on all parties or their counsel of record through the CM/ECF system.


               /s/ Eric Weitz
               Eric Weitz
               National Labor Relations Board
               1015 Half Street SE
Dated at Washington, D.C.,     Washington, D.C. 20570-0001
 this 12th day of May, 2025     (202) 273-3757

# UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

_____

|  |  |
|---|---|
| EXXONMOBIL RESEARCH & ENGINEERING COMPANY, INCORPORATED, now known as EXXONMOBIL TECHNOLOGY & ENGINEERING COMPANY | ) )  No.  23-60495 ) ) |
| Petitioner/Cross-Respondent | ) ) |
| v. | ) ) Board Case Nos. |
| NATIONAL LABOR RELATIONS BOARD | ) 22-CA-218903 ) 22-CA-223073 |
| Respondent/Cross-Petitioner | ) 22-CA-232016 ) |

_____

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 40(d)(3), the Board certifies that its brief contains 3,449 words of proportionally-spaced, 14-point type, and that the word processing system used was Microsoft Word 365.

/s/ Eric Weitz
Eric Weitz
National Labor Relations Board
1015 Half Street SE
Dated at Washington, D.C.,                          Washington, D.C. 20570-0001
  this 12th day of May, 2025                        (202) 273-3757